**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

| | | |
|---|---|---|
| JACQUELINE SHEARER, and | ) | |
| JOHN SWEENEY, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | CASE NO. 3:19-cv-965-PPS-MGG |
| | ) | |
| THOR MOTOR COACH, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

This is a lawsuit against the Thor Motor Coach, a manufacturer of recreational vehicles who are accused of selling a lemon to Jacqueline Shearer and John Sweeney. The plaintiffs claim the RV they bought was riddled with defects. The claims are for breach of warranty under state law and under the Magnusson Moss Warranty Act. They also bring a claim for unfair trade practices under the Florida Deceptive and Unfair Trade Practices Act. Thor seeks dismissal of the amended complaint. For the reasons discussed below, I will grant Thor's motion to dismiss, but the plaintiffs will be afforded an opportunity to amend their complaint.

### Background

Because we are at the motion to dismiss stage, I must accept all well-pleaded factual allegations in the amended complaint as true. Below are the pertinent facts, as Plaintiffs tell it in their amended complaint.

Defendant Thor Motor Coach, Inc. is in the business of manufacturing and selling RVs. [DE 8, Am. Compl. ¶ 5.] Although Thor is a Delaware corporation, its headquarters are in Indiana. Plaintiffs Jacqueline Shearer and John Sweeny are residents of Florida who purchased an RV manufactured by Thor, in Florida. [*Id.* at ¶ 4.] The amended complaint doesn't otherwise state the relationship between the two plaintiffs, but it's clear they purchased the RV together. Specifically, on September 3, 2017, they purchased a 2017 Thor Challenger KT for approximately $180,000 through a "Retail Installment Contract and Security Agreement." [*Id.* at ¶ 13.] That contract was entered in to by plaintiffs and America Choice RV Ocala, which is a Thor authorized dealer. [*Id.* at ¶ 10.]

In connection with the purchase of the RV, Shearer and Sweeney "acquired the RV in reliance on the existence of a written warranty and/or contract from [Thor], which was intended to benefit Plaintiffs as consumers purchasers of the RV[.]" [DE 8 at ¶ 14.] At some unspecified time after taking possession of the RV, Shearer and Sweeney discovered a multitude of apparent defects with their RV. The amended complaint lists them as: "Driver Side Panel Won't Lock, Driver Side Compartment Door Sticking, Wheel Hub Rattles, Front Hood Malfunctions, Rust Spots on Refrigerator, Front Passenger Side Compartment Rubbing, Refrigerator Shelves Cracked, Driver Side Vent Loose/No Air, Cabinet Needs Realigned, Bunk Sticks, Slides Inoperable, Microwave Door Rubbing, Awning LED Strip Coming Off, Front Awning LED Inoperable, Back Awning Malfunctions, Awning Fabric Stained, Batteries, Leveling System, Malfunctions, Passenger Side Compartment Door Latch, Driver Side Compartment

Door Metal Not Sealed, Entry Door Shock, Theater Seat Malfunctions, Driver Side Ceiling AC Inoperable, Slide Gaskets, Right Side Panel Warped, Outside Storage Compart Panel Bent, Driver Side Compartment Loose, Woodwork Fell Off, Wood Panel Came Off, Hot Water Malfunctions, and Passenger Side Slide System is Loose, *among other things*," [DE 8 at ¶ 17 (emphasis added).]

Furthermore, these problems appeared to have surfaced relatively shortly after they purchased the RV in September 2017. Shearer and Sweeney took the RV to be repaired at America Choice RV Ocala, a factory warranty authorized repair shop, on October 14, 2017. [DE 8 at ¶ 21.] The RV was in the shop for 64 days thereafter for the repair of 16 specified defects. [*Id.*] About a month after it was out of the shop, on January 18, 2018, Shearer and Sweeney took the RV to Camping World RV Sales Cocoa, another factory warranty authorized repair shop because of additional problems with the RV. [*Id.* at ¶ 22.] There, the RV was in the shop for 89 days for the repair of 12 specified alleged defects and issues. [*Id.*] Later, on June 8, 2018, (roughly 9 months after the purchase) Shearer and Sweeny took their RV to third factory warranty authorized repair shop named Quality RV. [*Id.* at ¶ 23.] Astoundingly, the RV was at Quality RV for nearly a year (362 days to be precise). The repair work was on 7 specified defects. [*Id.*] When plaintiffs picked up their RV on June 4, 2019, they apparently discovered numerous other defects and problems still existed with their RV. [*Id.* at ¶ 24.] To summarize, the RV was out of service and in a repair shop for more than 500 days in roughly the first two years they owned it.

Shearer and Sweeny say they were in constant communication with Thor throughout this time. [DE 8 at ¶ 27.] They exchanged emails and telephone calls relating to the RV. Unsurprisingly, plaintiffs say they were unhappy with the state of their RV and what they say was Thor's failure to live up to its obligations under its warranty. [*Id.* at ¶¶ 29-39.] They further allege that during this period Thor was generally unresponsive, delayed, and even deleted some of their communications from its customer service systems.

Shearer and Sweeney filed the lawsuit on October 30, 2019, or roughly 26 months after they acquired and took possession of the RV for the first time and nearly 6 months after it was last in the shop. [DE 1.] Thor has moved to dismiss the case principally on the ground that the term of warranty had expired before they brought this action.

## Discussion

Because the case is before me on a motion to dismiss, my task is to decide whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). In addition to accepting all well-pleaded facts as true, I draw all reasonable inferences in favor of the plaintiffs when making that call. But purely conclusory allegations, legal or otherwise, are insufficient to state a claim for relief; a plaintiff must allege a baseline level of ***facts*** in order to survive a motion to dismiss. *See McCauley v. City of Chicago*, 671 F.3d 611, 617 (7th Cir. 2011). That said, the burden isn't huge. Federal Rule of Civil Procedure 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is

entitled to relief.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). "Specific facts are not necessary, the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Erickson*, 551 U.S. at 93 (quoting *Twombly*, 550 U.S. at 555).

With these basic principles in mind, it's on to the motion to dismiss. Thor raises several arguments and attacks each of the claims asserted, and each of them will be addressed in turn. Thor's first argument deals with the statute of limitations. Resolution of that argument requires a somewhat involved discussion of choice of law principles and the competing interests of the parties' respective states.

As discussed above, Shearer and Sweeney reside in Florida; they have about as much connection to Indiana as the man on the moon does. They bought and took possession of their RV in Florida, and it appears they've never stepped foot in Indiana or have had any other contact with Indiana. But they have sued in Indiana because they are suing under the warranty that came with the RV they bought. Plaintiffs did not attach a copy of the warranty to their complaint, but Thor included it in its motion to dismiss briefing. Because the warranty is referenced throughout the amended complaint and is integral to the claims, I may properly consider it at the motion to dismiss stage. *Wright v. Assoc. Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir.1994) ("[D]ocuments attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim. Such documents may be considered by a district court in ruling on the motion to dismiss.") (citation omitted).

So, what does the warranty say? In its pertinent part it states: "Any action for breach of this warranty or any implied warranties must be commenced not more than 15 months after you first take delivery of your motorhome." [DE 11-2.] Furthermore, the warranty contains a forum selection clause which states that any lawsuit to enforce the warranty "must be brought within the County of Elkhart, State of Indiana." [*Id.*] The warranty is silent as to any choice of law and in fact states that a purchaser "may have other rights, which vary from state to state." [*Id.*] In sum, this is a case of Florida plaintiffs, who bought and used an RV in Florida but have now sued in Indiana. The initial question therefore is which state's law controls the statute of limitations: Florida or Indiana?

Under Florida law, the statute of limitations for breach of warranty is five years. Fla. Stat. § 95.11(2)(b). Furthermore, there is a specific Florida statute which states: "Any provision in a contract fixing the period of time within which an action arising out of the contract may be begun at a time less than that provided by the applicable statute of limitations is void." Fla. Stat. § 95.03. In other words, you cannot contractually shorten a statute of limitations under Florida law. Recall that the warranty in this case says that any action under the warranty must be brought within 15 months of the alleged breach, which is obviously shorter than the five years normally allowed under Florida law. But Indiana law is different. Under Indiana law, "[a]n action for breach of any contract for sale must be commenced within four (4) years after the cause of action has accrued." Ind. Code § 26-1-2-725(1). Bu the same statute has an important proviso. It says that

under the "original agreement the parties may reduce the period of limitations to not

less than one (1) year, but may not extend it." *Id.*

Obviously, there is an important difference between the two states' laws and so I

must determine which applies. It is clear that Indiana law applies. "[I]n Indiana statutes

of limitations are procedural in nature", and as such, "Indiana choice-of-law rules state

that the statute of limitations of the forum state, Indiana, will apply." *Bitler Inv. Venture*

*II, LLC v. Marathon Ashland Petroleum, LLC,* 779 F. Supp. 2d 858, 889 (N.D. Ind. 2011)

(citation omitted). "'If action is barred by the statute of limitations of the forum, no

action can be maintained though action is not barred in the state where the cause of

action arose.'" *Horvath v. Davidson*, 264 N.E.2d 328, 331 (Ind. 1970) (quoting

Restatement, Conflict of Laws, section 603 (1934)).

There is an exception to the rule of the forum state's statute of limitations

controlling for causes of action which are created under specific state statutes. *See*

*Horvath*, 264 N.E.2d at 334 ("Where the cause of action is not created by statute, but is a

right under common law, the form of the action, sufficiency of the pleadings, rules of

evidence, and the statute of limitations depend upon the law of the forum."). But it is

not applicable here because a breach of warranty claim is at its heart a breach of

contract claim and "suits for breach of contract existed at common law." *Bailey v.*

*Skipperliner Indus., Inc.*, 278 F. Supp. 2d 945, 952 (N.D. Ind. 2003). Thus the forum state's

law controls even if some other related claims in the lawsuit may be governed by a

different state's laws, as would be the case here with plaintiffs' deceptive trade practices

claims which are pleaded under a specific Florida statute. *See id.* ("[W]hile this Court

may apply Wisconsin substantive law to Plaintiffs' fraud and contract claims, it shall apply Indiana" statute of limitations to all issues in this case."). Thus, the warranty, by requiring the action be brought in Indiana, dictates the application of Indiana procedural law, including Indiana's law on statutes of limitations.

At first blush, this result might seem a little odd and perhaps unjust. Afterall, shouldn't Florida residents who enter into contracts in Florida to buy something in Florida from a company that is willingly doing business in Florida expect their contract to be governed by Florida law when there is no choice-of-law provision to the contrary in a contract? According the Supreme Court of Florida, the answer is no, and there is no issue with another state's laws trumping Florida's rule on no contractual shortening of the statute of limitations. The Florida Supreme Court has stated that "we do not consider the protections offered by a statute of limitations to be fundamental to a legal system" and accordingly Florida has no significant public policy interest in having its law on the statute of limitations applied. *Burroughs Corp. v. Suntogs of Miami, Inc.*, 472 So. 2d 1166, 1168 (Fla. 1985). In *Burroughs*, the court was faced with a contract which shortened the statute of limitations and which stated that Michigan law should govern its effect and interpretation. Michigan law, like Indiana law, allows for the contractual shortening of the statute of limitations so long as it is not reduced to less than one year. *See* Mich. Comp. Laws § 440.2725. The *Burroughs* court held that enforcing such contractual provisions did not offend Florida public policy in part because "the laws governing the time to bring a suit have a limited effect upon a contract insofar as they do not invalidate the contract, but merely allow the defendant to set up an affirmative

defense." 472 So. 2d at 1168. Thus, there is no reason to think the contract at issue here would offend the same Florida public policy, or lack thereof.

Nothing plaintiffs argue to the contrary is convincing. They cite to *Chmura v. Monaco Coach Corp.*, No. 8:04CV2054-T-24MAP, 2006 WL 709325, at *5 (M.D. Fla. Mar. 20, 2006), but that case offers little help to their cause. *Chmura* was litigated in Florida and there was no question that Florida law controlled. Thus, the court's ruling that "Monaco's attempt to shorten the limitations period is void" pursuant to Fla. Stat. § 95.03 makes perfect sense. But that situation was quite different than the one before me. Shearer and Sweeny make no effort to distinguish the Florida Supreme Court's holding in *Burroughs* that contractual provisions shortening the statute of limitations are valid, even in Florida courts, so long as they are not void under the law of the state in which they were created. *Burroughs*, 472 So.2d at 1168. *See also Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1341 (11th Cir. 2005) ("Because the two-year limitations period in the Purchase Agreement between Lucent and Maxcess does not violate strong public policy in Florida and is perfectly legitimate and enforceable under New York law, Maxcess was required to file any action within two years.").

Shearer and Sweeny also resort to a few fallback positions. They ask that I transfer this case to the Middle District of Florida pursuant to 28 U.S.C. § 1404. The basis for this motion is that the forum selection clause operates to circumvent Fla. Stat. § 95.03 which, again, states that contractual shortening of statutes of limitations are void under Florida law. They say that this fact satisfies § 1404(a)'s "in the interest of justice"

prong. There are a number of problems with this request, and accordingly, I will deny this "motion."[1]

First, the warranty contains a facially valid forum selection clause and plaintiffs offer no argument or facts to the contrary beyond those I rejected above. "[A] valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases." *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 63 (2013) (citations omitted). All plaintiffs offer in the way of "most exceptional circumstances" is their contention that the forum-selection clause here subverts the policy embedded in Fla. Stat. § 95.03. But *Burroughs* was rather unequivocal, and oddly, Florida doesn't care and doesn't view that statute as an integral part of Florida public policy. Thus, there seems to be few "interests of justice" at stake beyond serving Shearer and Sweeny's interest in this case and rewriting the contract they agreed to.

Furthermore, even if a transfer were granted (and given the forum selection clause and facts of this case there is no basis to), it wouldn't make of a difference. The U.S. Supreme Court has held that when a change of venue occurs under § 1404(a), "the transferee district court must be obligated to apply the state law that would have been applied if there had been no change of venue. A change of venue under § 1404(a) generally should be, with respect to state law, but a change of courtrooms." *Van Dusen*

_____

[1] Plaintiffs' motion could be dismissed out-of-hand because it is not a proper motion under the Northern District of Indiana's Local Rules. L.R. 7-1(a) requires that "Motions must be filed separately", not nestled within a portion of a brief opposing another party's motion to dismiss. But because the motion fails for obvious substantive reasons, I won't rely solely on such a technical basis to deny it.

*v. Barrack*, 376 U.S. 612, 639 (1964). Thus, even if this case were transferred to a Florida district court, that court would presumably be bound to apply Indiana law on the statute of limitations. Finally, it is worth mentioning that it was plaintiffs who brought this lawsuit in Indiana. The fact they are seeking a transfer of venue in response to a meritorious motion to dismiss strikes me as blatant forum shopping.

Plaintiff's next fallback argument is that I should defer ruling on the statute of limitations issue because "there are still issues of facts as to whether the clause in Thor's limited warrant attempting to shorten the applicable statute of limitations is enforceable" because they now say the warranty was not part of the "original agreement" with Thor. [DE 12 at 9.] This argument makes little sense, and it is difficult to see how it could be made in good faith. Plaintiffs' complaint directly contradicts this position and states that they received the warranty at the time they made the purchase. *See* DE 8 at ¶ 3 ("Defendant directly interreacted with Plaintiffs in Florida through its authorized dealership and agent with regards to the purchase and ***tender of the warranty to Plaintiffs at the time of purchase***…") (emphasis added); *id.* at ¶ 14 ("Plaintiffs acquired the RV in reliance on the existence of a written warranty and/or contract from Defendant…"). Plaintiffs cannot allege one thing in their complaint and then try to defeat a motion to dismiss by claiming the exact opposite.

Third, they further assert a theory of equitable estoppel and cite to *Carroll v. BMW of North America, LLC,* No. 119CV000224JMSTAB, 2019 WL 4243153 (S.D. Ind. Sept. 6, 2019), in support. On this argument, I think plaintiffs could potentially have some traction. But as currently pled, their amended complaint is insufficient and

certainly does not rise to the level of conduct or facts present in *Caroll* that dictated denial of the defendant's motion to dismiss. In that case, the court succinctly laid out the basic requirements of equitable estoppel of the statute of limitations. "The party asserting equitable estoppel must show that he: (1) lacked knowledge and the means to discover the facts in question; (2) relied upon the conduct of the party estopped; and (3) as a result, changed his position prejudicially." *Carroll*, 2019 WL 4243153, at *8. And while the court in *Carroll* did not require the plaintiff to "make specific factual allegations concerning the timing of the events and representations that he allege[d] tolled the statute of limitations," the complaint in that case outlined specific actions and facts by the defendants which, if true, would toll the statute of limitations. *Id.* Specifically, the plaintiff alleged that "Defendants knew of the Vehicle's oil consumption defect, had a duty to disclose it and warn him of the danger it might cause, and knowingly, affirmatively, and actively concealed it from him, while the Dealer represented that the Vehicle was not defective at all. … In addition, Mr. Carroll asserts that, because Defendants knowingly concealed the true nature and quality of the Vehicle and never intended to repair the defect, they are estopped from relying on a statute of limitations defense." *Id.* at *6.

Unlike in *Carroll*, I cannot say that Shearer and Sweeney have alleged enough (yet) to toll the statute of limitations. Plaintiffs allege that between May 2018 and August 2018, they made more than two dozen telephone calls to Thor and its authorized dealers in which Thor's representatives were "rude to Plaintiffs, refused to help Plaintiffs with their warranty repair concerns, stalled and delayed." [DE 8 at ¶ 25.]

-12-

They also say they communicated with Thor via email during this time, and Thor similarly "stalled and delayed." [*Id.* at ¶ 26.] Plaintiffs further allege that Thor then "apparently deleted Plaintiffs communications in its system." [*Id.* at ¶¶ 25-26.] That certainly isn't sterling behavior on Thor's part and could be part of a basis to toll, but it doesn't strike me as actions which were intended to deceive, trick, or dissuade Shearer or Sweeney from pursuing their rights, on their own. Some specific facts or substance as to what was communicated is required. Instead, as pleaded, the amended complaint suggests that Thor and its authorized dealers attempted to repair the RV in question multiple times. I can make inferences in favor of the plaintiffs at this stage, but I cannot make up unpled facts in their favor.

Furthermore, I think Shearer and Sweeney's allegations are meaningfully different than those in *McDermott v. Thor Motor Coach, Inc.*, Case No. 3:19-cv-1141-RLM-MGG (N.D. Ind. June 29, 2020) (Slip Op.), a recent opinion out of the Northern District of Indiana in which another judge granted a motion to dismiss in an RV case and found equitable estoppel was unavailable to the plaintiff. Thor submitted this opinion as part of a "Notice of Supplemental Authority" which would be instructive to deciding this case. [DE 14.] As an initial matter, the warranty in *McDermott* seems to contain terms, such as a specific Indiana choice of law provision, that do not appear in the warranty in this case. Second, while in *McDermott* there were multiple trips to repair centers, there was nothing indicating that the RV was out of the owner's possession for most of the time of the warranty—to repeat, more than 500 days—as was the case here. Nor did the court reference any delays on Thor's part, as alleged here as a general matter. Finally,

on at least one occasion, the plaintiff in *McDermott* was told that what he "wanted fixed would never be repaired" by Thor, but there is no such definitive statement alleged by Shearer or Sweeney. (*See* Slip Op. at 2-3). At bottom, and based on the arguments and amended complaint before me, *McDermott* has little to no impact on my decision.

But still, even making all reasonable inferences in Shearer's and Sweeney's favor, there is not enough factual matter to plead equitable tolling under either Florida or Indiana law.[2] In order to do so, Shearer and Sweeney need to point me to some specific actions or statements that led them into a false sense of security or inaction. *See, e.g.*, *Hummer v. Adams Homes of Nw. Fla., Inc.*, No. 8:13-CV-1981-T-17AEP, 2014 WL 897083, at *3 (M.D. Fla. Mar. 6, 2014) ("Unless Plaintiffs include additional allegations as to what each Defendant said or did which prevented Plaintiffs from acting on Plaintiffs' knowledge of the defective drywall, equitable tolling will not prevent the dismissal of Plaintiffs' claim."); *Ludwig v. Ford Motor Co.*, 510 N.E.2d 691, 697 (Ind. Ct. App. 1987) ("The affirmative acts of concealment must be calculated to mislead and hinder a plaintiff from obtaining information by the use of ordinary diligence, or to prevent inquiry or elude investigation."). Here, plaintiffs allege long delays and some generalized bad conduct on Thor's part, but at the same time make it quite clear that they knew of numerous defects with their RV almost immediately after purchase.

---

[2] The parties have not briefed whether Indiana law or Florida law controls the specific issue of equitable tolling of the statute of limitations. Because the result at this stage appears the same under either state's equitable tolling jurisprudence, I need not decide the issue unless and until the Plaintiffs file an amended complaint.

Standing alone, performing repairs are not enough to toll the statute of limitations, at least under Indiana law. *Ludwig*, 510 N.E.2d at 699 ("Under the present circumstances, we decline Ludwig's invitation to adopt the view that repair efforts toll the statute of limitations."). But if Shearer and Sweeney can allege something more akin to them having been lulled into inaction by Thor, it might well be a different kettle of fish. *See Kenworth of Indianapolis, Inc. v. Seventy-Seven Ltd.*, 134 N.E.3d 370, 384 (Ind. 2019) ("[W]e recognize that when a seller's repair actions fall outside the bounds of the original contract (or are fraudulent), that conduct **could be** of 'sufficient affirmative character to prevent inquiry or to elude investigation or to mislead and hinder,' thereby lulling a buyer into inaction and tolling the limitations period.") (emphasis in original and citation omitted). Without some statement or action by Thor or its agents (such as promising to repair the RV but unreasonably delaying until after the statute of limitations had run) which could have led to a delay in filing suit, equitable tolling is beyond plaintiffs' reach. But they should be given another chance to allege as much.

Next up is a separate argument as to Shearer and Sweeney's breach of implied warranty claims. Thor says that there is no possible claim because plaintiffs and Thor do not have direct privity of contract, a requirement under Florida law. Again, there is debate between the parties as to whether Florida or Indiana law controls which I must address before getting into the substance of the argument.

Unlike the statute of limitations, the existence of an implied warranty is a matter of substantive contract law; it is procedural. In this regard both parties have flipped positions like a banked catfish. Thor says that Florida law controls. Plaintiffs, despite

adamantly arguing Florida law should govern the statute of limitations issue as to their

breach of express warranty claim, suggest there is no conflict and thus I should apply

Indiana law as to the breach of implied warranty claims. Thor has the better of the

argument.

Under Indiana law, no privity of contract between a consumer and manufacturer

is necessary to state a breach of implied warranty claim. *Hyundai Motor Am., Inc. v.*

*Goodin*, 822 N.E.2d 947, 959 (Ind. 2005) ("Indiana law does not require vertical privity

between a consumer and a manufacturer as a condition to a claim by the consumer

against the manufacturer for breach of the manufacturer's implied warranty of

merchantability[.]")**.** Under Florida law, however, privity of contract is required. In

other words, in order to state a claim for breach of express or implied warranties, a

plaintiff must allege that they contracted with the defendant or purchased a product

directly from them. *Hill v. Hoover Co.*, 899 F. Supp. 2d 1259, 1267 (N.D. Fla. 2012) ("A

plaintiff who purchases a product, but does not buy it directly from the defendant, is

not considered to be in privity with that defendant.") (citation omitted); *Intergraph Corp.*

*v. Stearman,* 555 So.2d 1282, 1283 (Fla. 2d DCA 1990) ("Privity is required in order to

recover damages from the seller of a product for breach of express or implied

warranties.").That's obviously a difference between the two states' laws and thus a

conflicts of law analysis is required. Plaintiffs argue that there isn't any actual conflict

because, under certain circumstances under Florida law a lack of privity can be

overcome by alleging one is a third-party beneficiary under a contract. But that logic

puts the cart before the horse. In order to get to that point, I would need to evaluate the case under Florida law.

So, let's do the choice of law analysis. Because I am a federal judge sitting in Indiana, I must apply Indiana's choice-of-law jurisprudence to determine what law governs. *See Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938). Indiana uses the "most intimate contacts" test in contract cases. *Kentucky Nat'l Ins. Co. v. Empire Fire and Marine Ins. Co.*, 919 N.E.2d 565, 575 (Ind.Ct.App.2010). "In applying the most intimate contacts test, courts must consider the following factors: "(1) the place of contracting, (2) the place of negotiation, (3) the place of performance, (4) the location of the subject matter of the contract, and (5) the domicile, residence, nationality, place of incorporation and place of business of the parties," giving the greatest weight to the fourth of those factors. *Large v. Mobile Tool Int'l, Inc.*, 724 F.3d 766, 771 (7th Cir. 2013) (quoting *Kentucky Nat'l Ins.*, 919 N.E.2d at 575). Here, Shearer and Sweeney are Florida residents who entered into the purchase agreement with a dealer in Florida and received their RV under the contract in Florida. They experienced problems with the RV in Florida, and they had it repaired in Florida. Indiana's only connection seems to be that it is where Thor 's operations are located and where the parties agreed the lawsuit must be brought in accordance with the written warranty's forum selection clause. The warranty is otherwise silent as to substantive law and specifically notes that a purchaser's rights may vary from state to state. [DE 11-2.] It thus clearly does not demand application of Indiana law over the entire dispute. Given these facts, Florida has a greater interest in this lawsuit than Indiana and the "most intimate contacts."

-17-

It would seem evident then that plaintiffs cannot state a case under Florida law for breach of implied warranty—they concede they were not in contractual privity with Thor; they bought from a dealer. But plaintiffs further argue that Florida's privity requirement is not absolute, and privity is not a bar where a plaintiff can show they were a third-party beneficiary under a contract. The contours of this doctrine, like many issues relating to implied warranties under Florida law, appear somewhat in flux and require me to wade into conflicting decisions of federal district courts in Florida predicting how the Florida Supreme Court would decide the issue. *See, e.g., Smith*, 663 F. Supp. 2d at 1342 ("The Florida Supreme Court acknowledged that 'warranty law in Florida has become filled with inconsistencies and misapplications in the judiciary's attempt to provide justice to the injured consumer.'") (quoting *West v. Caterpillar Tractor Co.*, 336 So.2d 80 (Fla.1976)). So here we go.

The first thing to note is that judges within the Southern District of Florida have taken diametrically opposed views on this issue. One line of cases is represented by *Padilla v. Porsche Cars N. Am., Inc.*, 391 F. Supp. 3d 1108 (S.D. Fla. 2019). There, the court ruled that "[c]onsistent with Florida law, and this Court's application thereof, because Plaintiffs' did not purchase their used vehicles directly from Porsche, they lack contractual privity with Porsche and their implied warranty claim necessarily fails as a matter of law." *Padilla*, 391 F. Supp. 3d at 1117 (collecting cases). The court rejected an attempt to use the third-party beneficiary doctrine to overcome the privity requirement in the context of consumers purchasing a vehicle from a dealerships—even if the dealership was acting as the manufacturer's agent and clearly not the end-user of the

-18-

vehicle. *Id.* In doing so, it cited to *Mesa v. BMW of N. Am., LLC*, 904 So. 2d 450, 458 (Fla. Ct. App. 2005) where the Florida District Court of Appeals stated rather unequivocally that "[u]nder Florida law, a plaintiff cannot recover economic losses for breach of implied warranty in the absence of privity." In addition to *Padilla* and other similarly reasoned cases out of the Southern District of Florida, at least two other federal district courts outside of Florida has interpreted Florida law the same way. *See, Johnson v. Nissan N. Am., Inc.*, No. 17-CV-00517-WHO, 2018 WL 905850, at *5 (N.D. Cal. Feb. 15, 2018) (applying Florida law) ("Because the weight of the authority from modern Florida courts is consistent, however, I … follow the Florida courts' clear guidance that Florida law does not recognize this exception."); *In re Seagate Tech. LLC Litig.*, No. 16-CV-00523-JCS, 2017 WL 3670779, at *9 (N.D. Cal. Aug. 25, 2017) (applying Florida law and coming to the same conclusion).

The other line of cases, cited by Shearer and Sweeney, is represented by *Weiss v. Gen. Motors LLC*, 418 F. Supp. 3d 1173 (S.D. Fla. 2019). In that case, the court rejected *Padilla* and stated that a "Plaintiff can establish privity with [a manufacturer] if he alleges that he purchased a vehicle from an authorized dealer who was an agent of [the manufacturer], he was the intended consumer of the vehicle, the dealership was not the intended consumer, and the warranty was intended to benefit the consumer, not the dealership." *Weiss*, 418 F. Supp. 3d at 1183. Rather tellingly in my opinion, *Weiss* does not engage in much analysis, but instead merely brushes aside *Padilla* because in one of the earlier cases relied upon by *Padilla*, the third-party beneficiary question was not squarely before the court. *Weiss*, 418 F. Supp. 3d at 1183 ("[T]he plaintiffs in [*In re Takata*

-19-

*Airbag Products Liability Litig.*, 193 F. Supp. 3d 1324, 1346 (S.D. Fla. 2016)] did not

respond to the defendant's privity argument. Therefore, the court did not consider or

analyze a fully brief and contested third-party beneficiary argument.") But that does

nothing to address the analysis found in subsequent cases (like *Padilla*) where the issue

was undoubtedly briefed and before the court. *Weiss* further does nothing to address

the Florida District Court of Appeal's unequivocal statement and holding in *Mesa*

"[u]nder Florida law, a plaintiff cannot recover economic losses for breach of implied

warranty in the absence of privity." *Mesa*, 904 So. 2d. at 458. Ignoring state appellate

court precedent results in an unconvincing argument as to what the Florida Supreme

Court would do.

      But even setting aside the dueling judges in the Southern District of Florida, the

fundamental problem I see with Shearer and Sweeney's argument is that they seek to

transform the third-party beneficiary doctrine into something completely new. Shearer

and Sweeney entered into a contract with the dealership. They are thus a party to the

agreement (the warranty) in question, ***not*** a third-party. They are not seeking, as far as I

can tell, to enforce any contract between Thor and its dealer, which would be a

theoretical contract they would theoretically be a third-party to and thus theoretically a

third-party beneficiary of. This fundamental principle of contract law was recognized in

another, even more recent, decision out of the Southern District of Florida. In *Fuller v.*

*Marinemax East, Inc.*, the court addressed this very issue. In addressing the same

argument Shearer and Sweeney advance here, and rejecting *Weiss*, the court hit the nail

on the head. "Plaintiff's argument makes little sense. The question is not whether

Plaintiff should benefit from the warranties in his Purchase Agreement, but whether privity of contract exists between Plaintiff and [the manufacturer]. Where, as here, the agreement at issue was specifically signed by the party seeking to benefit from the third-party beneficiary status, there is no function for the third-party beneficiary doctrine." *Fuller*, No. 18-CIV-61389-RAR, 2020 WL 3266195, at *4 (S.D. Fla. Mar. 10, 2020). I agree completely.

Finally, while I am sympathetic to the statement in *Weiss* that this means "a manufacturer would always be able to shield itself from implied warranty claims even though it knows that its intended consumer is not the dealership," *Weiss*, 418 F. Supp. 3d at 1183, and that that may not be a great outcome from a policy-perspective, creating Florida public policy isn't my job. Nor do I think the Florida Supreme Court would take such a broad view of third-party beneficiary law. Instead, the Florida Supreme Court has stated, at least in passing, that in contract actions (as opposed to strict products liability), breach of implied warranty is still a valid claim, but one which requires privity. *See Kramer v. Piper Aircraft Corp.*, 520 So. 2d 37, 39 (Fla. 1988) ("[T]he contract action of breach of implied warranty … remains … where privity of contract is shown."). *Weiss's* holding effectively abrogates the privity requirement in consumer transactions by allowing the third-party beneficiary doctrine to operate so broadly. Thus, regardless as to whether they can plausibly overcome the statute of limitations as to any breach of warranty claims in their second amended complaint, plaintiffs' lack of privity with Thor is fatal to their breach of implied warranty claim.

One final thing on the breach of implied warranty claim before I move on to the claim under the Florida Deceptive Trade Practices Act. It is unclear why the plaintiffs have not sued the dealership from whom they bought the RV and who did some of the warranty work in this case, America Choice RV Ocala. Presumably, there would be privity of contract with that dealership. But alas, no such claim has been made. In addition, if the plaintiffs truly want to bring a third-party beneficiary claim, they need to focus on some other contract, perhaps the contract that surely must exist between Thor and America Choice RV Ocala. But whether there is such a contract, and whether the plaintiffs would be a third-party beneficiary of that contract, is not before me.

That leaves plaintiffs' claim under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. §§ 501.201 *et seq.*, to address. Thor's argument here is relatively straight forward. It simply says that Shearer and Sweeney's amended complaint contains nothing more than a routine breach of warranty claim plus "a formulaic recitation of potential violations of the Florida statute", and thus fails to allege the specific facts necessary to show something deceptive or unfair on Thor's part. [DE 11 at 8-9.] I agree.

Shearer and Sweeney's FDUPTA claim is certainly formulaic and reads almost as a copy and paste from the statute. Plaintiffs' response to Thor's argument is similarly generic. They say over and over again that Thor engaged in deceptive practices, but they fail to lay out any sort of specific actions that qualify as unfair or deceptive under the FDUPTA. Instead, plaintiffs allege wholly generically that "Defendant committed one or more unfair and/or deceptive and/or unconscionable acts, omissions, or

practices in the conduct of trade of commerce including but not limited to" 29 separate things. Those include generic and conclusory things like "Breach of express and/or implied warranties and/or contract" "Violation of the Magnuson Moss Warranty Act and/or its applicable regulations"; "Violation of other consumer protection statute(s)"; "Failing to remedy defects in a warranted RV within a reasonable number of attempts"; "failing to honor a request to take the RV back and rescind and/or cancel the sales and warranty and/or contract transaction within a reasonable amount of time"; "Including one or more unconscionable and/or unreasonable terms in the written warranty document(s) and/or one or more terms and/or conditions not fully and conspicuously disclosed in simple an [*sic*] readily understood language"; "Stalling and/or delaying the performance of a legal obligation"; "Selling RVS which it warrants in Florida, but using a forum selection clause in its warranty in an attempt to circumvent Fla. Stat. § 95.03, resulting in a benefit to Defendant but improperly limiting Plaintiffs' rights, and contrary to public policy in Florida"; and "Refusing to authorize repairs under its warranty at any dealer that is not a Camping World dealer even though the Camping World dealers would not timely schedule repairs or were not close to Plaintiffs." [DE 8 at ¶ 5, subparagraphs 5, 6 7 8, 12, 13, 27, and 29.] And that's just a subset of this portion of the amended complaint.

This formulaic and vague litany of generic wrongs leads to many more questions than answers. For example: Did Thor lie about the quality of the product? How so? Did Thor trick either plaintiff into doing something against their interest? What? Did Thor lure plaintiffs into the transaction? How so? Did Thor falsely advertise the transaction?

What specific terms of the warranty were unconscionable? What specific terms weren't disclosed? What legal theory supports a forum selection clause being unconscionable? What is Thor's relationship to "Camping World?"

None of that information is contained within the amended complaint, and plaintiffs' response to the motion to dismiss does not elaborate. Instead, they respond to arguments Thor didn't make, such as arguing their complaint doesn't need to satisfy Federal Rule of Civil Procedure 9(b)'s heightened pleading requirement for fraud claims. They also devote a portion to pointing out that plaintiff Sweeney is a military veteran and thus there may be heightened penalties under the statute for deceiving him. [DE 12 at 20-22 (citing Fla. Stat. § 501.2077.] But I'm not sure why that is relevant at this stage of the proceedings. More to the point, what plaintiffs don't do is cite to similar cases involving similar factual situations and I am left guessing as to what plaintiffs mean beyond alleging that Thor breached its warranty and then saying the same thing in 29 different ways. That is not enough. *Willard v. Home Depot, U.S.A., Inc.*, No. 5:09-CV-110/RS/-MD, 2009 WL 1884395, at *2 (N.D. Fla. June 29, 2009) ("However, absent 'significant allegations of unfair or deceptive conduct,' a complaint that merely alleges intentional breach of contract is insufficient to state a claim under FDUTPA.") (citation omitted); *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773, 777, n.2 (Fla. 2003) (holding that the FDUTPA does not "convert every breach of contract or breach of lease case into a claim under the [FDUPTA]"). Accordingly, I will dismiss this claim without prejudice as well. If plaintiffs want to plead a claim under the FDUPTA they must allege specific things they say Thor did wrong and which are actionable under the

FDUPTA—not unlike what they must do in order to state a plausible basis for equitable tolling. A generic, everything-under-the-sun approach that is nothing more than a breach of warranty claim is insufficient.

### Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss [DE 10] is GRANTED, and all of Plaintiffs claims are DISMISSED. Plaintiffs are granted leave to file an amended complaint within 30 days alleging facts could support a theory of equitable estoppel as to their breach of express warranty and Magnusson-Moss claims, and a factual basis for their FDUPTA claim. If they do not file a second amended complaint within 30 days, I will direct the Clerk of Court to close the case.

SO ORDERED on July 1, 2020.

 /s/  Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT